# Federal Defenders
## OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

October 5, 2022

<u>Via Email</u>
Steven S. Guttman
United States Probation Officer
Eastern District of New York
Steven_Guttman@nyep.uscourts.gov

<u>**Re: United States v. Samantha Shader, 20-CR-202 (DLI)**</u>

Dear Officer Guttman:

      We write in response to the PSR Addendum issued in this matter on September 19, 2022 (PSR Add.) with our apologies to the Court regarding the timing of this letter.

      <u>First</u>, as set forth below, the defense objects to the decision to deny Ms. Shader a reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, as it does not take into account the elements of the attempted arson offense, 18 U.S.C. § 844(i), she pled guilty to or her allocution at the plea hearing. It is also based on a fundamental misunderstanding of defense counsel's objection: the defense has only argued that the facts of this case show that the device Ms. Shader threw at the NYPD van was not *in fact* an operational Molotov Cocktail. There is no basis for the PSR Addendum's assertion that Ms. Shader, herself, is now claiming that she did not believe the device to be operational at the time of her offense. The defense, therefore, is in no way challenging Ms. Shader's belief at the time of the offense that the object she threw could explode. Ms. Shader clearly stated during her plea allocution, she believed the device she threw could explode or cause fire to the NYPD van.[1]

      <u>Second</u>, the defense objects to the PSR Addendum's claim that whether Ms. Shader knew the NYPD van was occupied is "irrelevant" for purposes of the official victim enhancement, U.S.S.G. § 3A1.2. This argument is contrary to binding Second Circuit case law cited in the defense's objections to the PSR and the government's response.

      <u>Finally</u>, the defense acknowledges that Ms. Shader is subject to base offense level 24 pursuant to U.S.S.G. § 2K1.4(a)(1) and withdraws its previous objection regarding the same.

---

[1] See Attachment A – Excerpt of the April 25, 2022 plea transcript.

**Defense counsel's objections to the PSR do not contradict Ms. Shader's plea of guilty to an attempted arson offense.**

The PSR Addendum's decision to deny Ms. Shader acceptance of responsibility based on defense counsels' objections to the PSR—and not any conduct or statements by Ms. Shader herself—relies on a fundamental misunderstanding of the offense Ms. Shader pled guilty to. Ms. Shader pled guilty to *attempted* arson as set forth in 18 U.S.C. § 844(i), which provides:

> Whoever maliciously damages or destroys, *or attempts to damage or destroy*, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce [is guilty of a crime].

*Id.* (emphasis added). The elements of this offense required Ms. Shader to admit to having *attempted* to damage the NYPD van "by means of fire or an explosive." It is therefore incorrect to state that "[t]he defendant pled guilty to an arson count. She is now effectively arguing that she did not commit arson." PSR Addendum (PSR Add.), 1. As the facts of this case show, there was no arson, fire, or explosion as a result of Ms. Shader's offense conduct. She committed attempted arson and that attempt was unsuccessful.

During her plea allocution Ms. Shader admitted that she attempted to damage the NYPD van by fire or an explosive device in violation of § 844(i):

> On May 29, 2020, in Brooklyn, New York, using a lighter I tried to light a piece of material that was sticking out of a bottle that I believed contained a flammable substance. I then threw the bottle at a parked New York City Police Department vehicle. I did so recklessly and with willful disregard of the possibility that damage could result.

Plea Transcript, 34:7–13. None of the elements of § 844(i) required Ms. Shader to state that the bottle that she threw was in fact an operational explosive device or that she actually caused a fire. Indeed, the government did not require Ms. Shader to say she started a fire or used an operational explosive device during her allocution, which was accepted as satisfactory by the government and the Court. *Id.* at 34:14-16.

Nothing in defense counsel's objections to the PSR can or should be read to suggest that Ms. Shader, herself, no longer admits that she attempted to damage the NYPD van by fire or explosive in violation of § 844(i). The purpose of defense counsel's objections to the PSR is to highlight that Ms. Shader did not *in fact* use an operational explosive device during the offense conduct. This argument is underscored by the fact that the bottle Ms. Shader threw did not catch fire, explode, or set the NYPD van on fire. That a completed arson offense may have been factually impossible does not make Ms. Shader any less guilty of attempted arson. All courts are in agreement that what is usually referred to as "factual impossibility" is no defense to a charge of attempt. *See United States v. Reed*, 773 F.2d 477 (2d Cir. 1985) ("The law in this Circuit, as well as in New York State, is that the factual impossibility of the commission of a crime is not a defense. If the crime could have been committed had the circumstances been as the defendant

believed them to be, it is no defense that in reality the crime was impossible of commission."); *see also United States v. Heng Awkak Roman*, 356 F. Supp. 434, 438 (S.D.N.Y.), *aff'd*, 484 F.2d 1271 (2d Cir. 1973); *United States v. Wilson*, 565 F. Supp. 1416, 1425-26 (S.D.N.Y. 1983), overruled on other grounds. To prove an attempt, the government need only show that the defendant possessed the intent, and took a substantial step towards commission of the completed crime.

Still, the fact that the device did not and likely could not explode is plainly something the Court can and should consider when evaluating the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1). It is also strong evidence of the lack of premeditation on Ms. Shader's part, which was noted in the original PSR.

**Ms. Shader is entitled to acceptance of responsibility points under clearly established law.**

There is no basis in U.S.S.G. § 3E1.1 for denying Ms. Shader points for acceptance of responsibility based on the "nature" of her counsel's objections to the PSR. Indeed, the PSR Addendum does not identify anything in § 3E1.1 that supports denying Ms. Shader acceptance of responsibility. Ms. Shader provided a timely and complete allocution to the offense of conviction, which was accepted by the Court. As a result, there is no legal or factual basis for the PSR Addendum's conclusion that Ms. Shader is now denying the offense conduct she pled guilty to.

Denying a defendant an adjustment for acceptance of responsibility based on legal arguments made by counsel plainly violates the Fifth Amendment. In deciding whether a defendant qualifies for the two-level adjustment, the district court should consider, *inter alia*, whether the defendant has truthfully admitt[ed] the conduct comprising the offense(s) of conviction, and truthfully admitt[ed] *or not falsely den[ied]* any additional *relevant conduct* for which the defendant is accountable under § 1B1.3 (Relevant Conduct). *Id*. § 3E1.1 Application Note 1(A) (emphases added). As to relevant conduct, however, commentary to the acceptance of responsibility guideline specifies that *a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a)*. Therefore, "the paramount factor in determining eligibility for § 3E1.1 credit is whether the defendant truthfully admits *the conduct comprising the offense or offenses of conviction*." *United States v. Kumar*, 617 F.3d 612, 637 (2d Cir. 2010) (quoting *United States v. Teyer*, 322 F.Supp.2d 359, 376 (S.D.N.Y. 2004) (emphasis added)).

Although Application Note 1(A) suggests that one appropriate consideration is whether "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility," *see United States v. Rivera*, 96 F.3d 41, 43 (2d Cir. 1996) (upholding denial of § 3E1.1 reduction where defendant had not shown "contrition and candor"), the law is clear that a defendant's due process right to contest alleged factual errors in his PSR, his good-faith objection to material PSR statements that he disputes does not provide a proper foundation for denial of

3

the acceptance of responsibility credit. *See generally United States v. Lee*, 653 F.3d 170, 172-174 (2d Cir. 2011) (impermissible for government to withhold a motion for the third acceptance point after defendant timely pleaded guilty but lodged a meritless PSR objection, thereby triggering the need for a *Fatico* hearing); *United States v. Delacruz*, 862 F.3d 163, 177–78 (2d Cir. 2017).

In *United States v. Austin*, the Second Circuit held that that a district court's denial of acceptance of responsibility credit based on challenges to conduct "beyond the offense of conviction" lacked a proper foundation:

> In construing § 3E1.1, this Court has concluded that a defendant need accept responsibility only for the conduct underlying the offense of conviction. *See United States v. Oliveras,* 905 F.2d 623, 628–30 (2d Cir.1990) (reduction for acceptance of responsibility cannot be conditioned on a defendant admitting to conduct beyond the offense of conviction); *see also United States v. Perez–Franco,* 873 F.2d 455, 461–64 (1st Cir.1989) (same). . . . On November 1, 1992, the Sentencing Commission attempted to clarify the issue by adding what is now Application Note 1(a) to § 3E1.1: "a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction" for acceptance of responsibility. U.S.S.G. Application Note 1(a); *see also United States v. Hicks,* 978 F.2d 722, 726 (D.C.Cir.1992) (the November 1, 1992 amendment to § 3E1.1 "seems to resolve the confusion" by requiring that a defendant accept responsibility only for the offense of conviction). . . . The Sentencing Commission therefore seems to have endorsed the position we adopted in *Oliveras,* 905 F.2d at 628–29.

*United States v. Austin*, 17 F.3d 27, 30-31 (2d Cir. 1994). Furthermore, In *United States v. Lee*, the Second Circuit found that denial of a third acceptance point was improper in a case where the defendant's meritless objections to the PSR led to a *Fatico* hearing. 653 F.3d 170, 174 (2d Cir. 2011). The Court noted:

> A defendant—even one who pleads guilty—has a due process right to reasonably contest errors in the PSR that affect his sentence. *United States v. Eschman,* 227 F.3d 886, 890 (7th Cir.2000) (holding that "criminal defendants ... have a due process right to be sentenced on the basis of reliable information"). A defendant should not be punished for doing so. If there is a good faith dispute as to the accuracy of factual assertions in the PSR, the defendant's request that the dispute be resolved is not a permissible reason for the government to refuse to make the § 3E1.1(b) motion, even if resolution of the dispute requires a *Fatico* hearing. The government's refusal to make the motion under these circumstances is "unlawful and grounds for reproach" because it ignores the language of the guideline, its purpose, and the intent of Congress.

*Lee*, 653 F.3d at 174.

Thus, The PSR Addendum wrongly calls into question Ms. Shader's acceptance of responsibility based on the view that her objections to certain guideline enhancements are "troubling" or should not have been advanced. There is nothing in § 3E1.1 that restricts Ms. Shader's ability to contest sentencing enhancements or allows a defendant to be penalized for making such an argument. Ms. Shader has an unfettered right to pursue these arguments and objections under the guidelines and the plea agreement and we put these arguments before the Court for its consideration and evaluation of § 3553(a) factors. In addition, the conclusion that these objections are "troubling" relies on the false claim that Ms. Shader and her attorneys are arguing that her conduct was not at all dangerous, that it could not have caused injury to anyone, or that she should not be held accountable for her behavior. PSR Add., 2. Nothing in the defense's PSR objection letter supports this claim. To the contrary, Ms. Shader has, at every turn, expressed her "contrition," *Rivera*, 96 F.3d at 43, and acknowledged the recklessness of her actions. She has said as much to the arresting NYPD officers, to the federal agents and detectives, to her counsel, to her friends, family, and other inmates. She has not for one moment disputed this. We, as her counsel, are simply advancing a legal argument that we believe to be meritorious. Denial of acceptance points and a revised sentencing recommendation would greatly chill defendants' core Fifth Amendment right to challenge the government's proof on facts and legal conclusions that are separate from the elements of the crime of conviction.

The only argument advanced by the defense is that Ms. Shader's conduct did not create a "substantial risk of bodily injury" as that term is defined § 2K1.4(a)(1)(A). This is a determination the Court is tasked with making based on its own evaluation and after hearing arguments from the parties. However, as the defense now acknowledges that Ms. Shader is subject to base offense level 24 under § 2K1.4(a)(1)(B) this point is now moot.

**Case law interpreting the official victim enhancement requires evidence that Ms. Shader was aware the NYPD van was occupied by police officers.**

The PSR Addendum ignores binding case law in claiming that whether Ms. Shader was unaware that the NYPD van was occupied is "irrelevant" to the application of the official victim enhancement, § 3A1.2(c). As set forth in the defense's PSR objection letter and government's response, the Second Circuit has held that an "assault" for purposes of the official victim enhancement refers to a common-law assault, which is a specific intent crime. *See United States v. Young*, 910 F.3d 665, 672 (2d Cir. 2018) (requiring the specific intent to assault an officer for purpose § 3A1.2(c)); *United States v. Delis*, 558 F.3d 177, 180 (2d Cir. 2009) (describing the elements of a common law assault). This unequivocally shows that the application of a § 3A1.2(c) enhancement here depends on whether Ms. Shader knew there were officers inside the van and deliberately targeted them. Indeed, the government does not dispute this in its objection letter and seeks to prove that Ms. Shader was aware there were officers inside the van at a *Fatico* hearing.

Counsel's disagreement with the government's position and the applicability of this enhancement does not equate to a refusal by Ms. Shader to accept responsibility for the crime to

5

which she has pled. Nor is Ms. Shader now denying something to which she previously agreed or stipulated. The plea agreement in this case, which was the result of extensive discussions between the parties, explicitly contemplated that defense counsel would object to the § 3A1.2(c)(1) enhancement.

**Ms. Shader is subject to a base offense level of 24 pursuant to § 2K1.4(a)(1)**

The defense no longer disputes that Ms. Shader is subject to a base offense level of 24. As set forth in the government's sentencing memorandum, § 2K1.4(a)(1) sets forth two alternative bases for a base offense level of 24. *See* ECF No. 51 at 8. The defense concedes that § 2K1.4(a)(1)(B), concerning the attempted destruction of a "state or government facility" applies to the facts of this case. As a result, the defense submits that the total offense level is 21 (base offense level 24 less 3 levels for acceptance of responsibility).

Respectfully Submitted,

*/s/*
Samuel Jacobson
Leticia Olivera
Assistant Federal Defenders

cc: all counsel of record (by ECF)
    Jennifer Fischer, USPO (by Email)
    Clerk of Court (by ECF)

# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,       : 20-CR-00202(DLI)
                                :
                                :
                                :
      -against-                 : United States Courthouse
                                : Brooklyn, New York
                                :
                                :
SAMANTHA SHADER,                : Monday, April 25, 2022
                                : 10:00 a.m.
         Defendant.             :

- - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE DORA L. IRIZARRY

A P P E A R A N C E S:

For the Government: BREON PEACE, ESQ.
                       United States Attorney
                       Eastern District of New York
                         271 Cadman Plaza East
                         Brooklyn, New York 11201
                    BY:  IAN CRAIG RICHARDSON, ESQ.
                         JONATHAN EDGAR ALGOR, IV, ESQ.
                         Assistant United States Attorneys


For the Defendant:    FEDERAL DEFENDERS OF NEW YORK
                         One Pierrepont Plaza
                         16th Floor
                         Brooklyn, New York  11201
                      BY: SAMUEL JACOBSON, ESQ.


Court Reporter:     VICTORIA A. TORRES BUTLER, CRR
                    225 Cadman Plaza East/Brooklyn, NY 11201
                    VButlerRPR@aol.com
Proceedings recorded by mechanical stenography, transcript
produced by Computer-Aided Transcription.

THE DEFENDANT: There's no -- that's not necessary, ma'am.

THE COURT: So at this point I would like for you to describe for me, in your own words, what it is you did in connection with the acts that are charged in Count Two charging you with arson.

THE DEFENDANT: On May 29th, 2020, in Brooklyn, New York, using a lighter, I tried to light a piece of material that was sticking out of a bottle that I believed contained a flammable substance. I then threw the bottle at a parked New York City Police Department vehicle. I did so recklessly and with willful disregard of the likelihood that damage would result.

THE COURT: Is the allocution satisfactory to the Government?

MR. RICHARDSON: It is, Your Honor.

I would just proffer that the Government, if this case were to proceed to trial, the Government would prove that the vehicle was an NYPD van that the bottle was thrown at. It was being used by officers of the New York City Police Department to regulate an ongoing civil disorder on the streets of Brooklyn, which is one of the many activities of the NYPD that affects interstate commerce.

THE COURT: Does the Defense stipulate to the interstate commerce --

1      MR. JACOBSON:  Yes, we do, Your Honor.
2      THE COURT:  -- proffer?
3      MR. JACOBSON:  We do.
4      MR. RICHARDSON:  Your Honor, if I may?
5      THE COURT:  Yes?
6      MR. RICHARDSON:  One more point.
7      In the plea agreement, the Office, in paragraph 5B, has promised to advocate for a sentence at the low end of the estimated guidelines range of 87 to 108 months and make no motion for an upward departure on the sentencing guidelines.
11     I would just like to make sure that the defendant understands that the Office's recommendation as to sentence is not binding on this Court and if the Court chooses not to accept the Office's recommendation, this defendant would not be able to withdraw the guilty plea.
16     THE COURT:  Do you understand what Mr. Richardson has just said?
18     THE DEFENDANT:  Yes, ma'am.
19     THE COURT:  In fact, any recommendation that is made by your attorney or by the Government or even Probation is not binding on the Court.  I certainly will consider them, but it is not binding on the Court.
23     Do you understand that?
24     THE DEFENDANT:  Yes.
25     THE COURT:  Okay.

1    Do you have any question at all about any of this?
2    THE DEFENDANT:  No.
3    THE COURT:  Based on the information given to me I
4 find that Ms. Shader is acting voluntarily, that she
5 understands her rights and the consequences of her plea and
6 that there is a factual basis for the plea.
7    I, therefore, accept her plea of guilty to Count 2
8 of the indictment that has been filed with the Court.
9    I gave everybody a whole long explanation about my
10 sentencing procedures.  I think all of you have gone through
11 some sentencings with me, but just a reminder, please:  That
12 there is going to be a separate electronic order setting forth
13 the sentencing schedule here, including the date for the
14 disclosure of the Pre-Sentence Report.  Within 14 days of the
15 disclosure of the Pre-Sentence Report, both sides will submit
16 any objections to the Pre-Sentence Report in writing to
17 Probation.  Please provide a hardcopy to the Court.  That
18 includes, even if there is no objection to the Pre-Sentence
19 Report, I need a letter indicating that there are no
20 objections.
21    If there are objections to the Pre-Sentence Report,
22 the adversary shall respond in 14 days; again, in writing.
23 Please make sure I get a courtesy copy.  With COVID, I have
24 actually had the attorneys file them on the docket just
25 because we do not know where we are going to be at any given

1 time. If the proponent of the objection wishes to reply, you
2 have to do so within 14 days. Again, make sure it is in
3 writing and then I get a hardcopy of it.
4     With respect to the sentencing memoranda, I require
5 the Government to go first, fourteen days prior to the date of
6 sentence. Just count backwards from the date of sentence,
7 just do not include the date of sentence. Wherever you fall
8 that is the date.
9     Then Defense Counsel, seven days prior to sentence.
10 It should fall in seven days after the Government submits. I
11 only need one hardcopy of your sentencing memoranda, okay?
12 And one copy of the objections too.
13     Trials happen, unfortunately with this COVID time
14 that we are in, how things happen, hopefully not, but if
15 something happens that you cannot comply with the sentencing
16 schedule, please let me know as far in advance as you can
17 because sometimes it means adjusting the schedule.
18     One thing that has been affecting the ability of
19 Probation to get the Pre-Sentence Reports out, there are two
20 things. With inmates, it is the ability to interview the
21 defendant. Unfortunately, there have been shutdowns, national
22 shutdowns and all of that stuff, so that is something that
23 could affect the disclosure.
24     The other thing are any delays in the Government
25 getting the offense conduct information to Probation. So

1  please try to make sure that you get that to them as quickly
2  as you can because that can delay the process, okay?
3            MR. RICHARDSON:  Yes, Your Honor.
4            THE COURT:  All right.
5            Are there any questions about anything or anything
6  you would like to bring up at this time?
7            MR. JACOBSON:  Not for Ms. Shader, thank you,
8  Your Honor.
9            THE COURT:  Government?
10           MR. RICHARDSON:  Not from the Government.
11           THE COURT:  All right, thank you.
12           Marshals, you may take charge.
13
14           (Matter concluded.)
15
16                          ooo0ooo